Tuesday                    28th

June, 2005.

In Re:  Carl Dicks,                                                                 Petitioner.

Record No. 0356-05-4

Upon a Petition for a Writ of Actual Innocence

Before Chief Judge Fitzpatrick, Judges Elder and Humphreys

Carl Dicks petitions this Court for a Writ of Actual Innocence pursuant to Chapter 19.3 of Title 19.2 of the Code of Virginia.  He contends he is innocent of distribution of cocaine, robbery, aggravated malicious wounding, and use of a firearm, of which he was convicted and sentenced in the Circuit Court of Prince William County on August 14, 1995.  Pursuant to Code § 19.2-327.11(C), this Court ordered the Attorney General to file a response to the petition.  This Court granted petitioner's request for appointment of counsel and permitted appointed counsel to file a reply to the Attorney General's response to the petition.

Upon consideration of the petition, the response of the Attorney General, the reply filed by petitioner's counsel, and the records of prior proceedings in the case, this Court dismisses the petition pursuant to Code § 19.2-327.13 for the following reasons:

Facts Adduced at Trial

On the afternoon of February 20, 1995, Samuel Russo purchased cocaine in a Manassas parking lot.  Earlier that day, Russo had consumed three beers.  Immediately after purchasing the cocaine, Russo smoked it, and then sought to purchase more cocaine from the same person.  During the second transaction, the seller, who was standing only two feet from Russo, shot Russo three times.

A few hours after the shooting, Russo told Detective W. A. Goodman that three black males had been involved.  Russo described two of the men to Goodman.  The first man, who was the gunman, had

a "long egg-shaped" face and a smooth complexion. He was wearing black pants and a tan and green shirt, was more than six feet tall, and weighed about 150 pounds. The second man had a "weathered" face and dark skin. Russo described his hair as looking like two-inch-long "night crawlers." Russo stated that the second man was dressed in red pants and a red shirt with black "specks."

The next day, Goodman and Russo developed a composite picture of one of the perpetrators. Using that composite, Goodman put together a photographic lineup that included petitioner's picture. On March 20, 1995, Goodman presented the photographic lineup to Russo. Russo chose a photograph of Alvin Hogan as the person who shot him. Hogan later confessed to being involved in the incident.

Russo viewed the same photographic lineup again three days later. Goodman asked Russo if there were any other suspects pictured in the lineup that were involved in the crimes. Russo stated that he had recognized other individuals in the lineup, but had not disclosed this earlier because he was on probation and he had been purchasing drugs when the crimes occurred. Russo then selected petitioner's photograph from the lineup and identified petitioner as the gunman. Russo testified at trial that he recognized petitioner as the gunman in his first viewing of the lineup, but he had not told the police for fear of retaliation against his family. Russo said there was no doubt in his mind that petitioner was the one who shot him.

Russo testified that he and Herme Martinez drove to Manassas in Martinez's truck on the afternoon of February 20, 1995, for Russo to purchase cocaine. Russo engaged petitioner in conversation about making the purchase. Russo gave petitioner forty dollars, and petitioner gave Russo cocaine. Martinez and Russo drove a short distance away, parked, and using an empty beer can, Russo smoked the cocaine.

Thereafter, petitioner and another man appeared at the parked truck. Russo said he wanted to purchase more cocaine. Petitioner showed Russo a package and told him that it cost $100. Russo handed the money to petitioner and received the package from petitioner. Suddenly, the man who was with petitioner reached into the truck and tried to grab Russo's wallet from his lap. A struggle ensued,

but Russo maintained possession of his wallet. Petitioner, who was standing within two feet of Russo, pointed a gun at Russo through the truck window. Petitioner shot Russo twice, in the right elbow and left thigh. Russo threw his wallet out the window. As Russo attempted to get out of the truck, petitioner shot him in the back.

<u>Interrogation of Suspect in Unrelated Crime by Goodman</u>

In support of his petition for a writ of actual innocence, petitioner relies upon one page of an interrogation by Goodman of a suspect involved in a crime unrelated to petitioner's crimes. Petitioner contends that Goodman indicated during that interrogation that he thought petitioner's co-defendant, rather than petitioner, was the shooter in the February 20, 1995 crimes committed against Russo. During the interrogation, Goodman referred to "Coco," the street name for petitioner's co-defendant, Dondrell Macon. After Goodman mentioned Coco, Goodman stated to the suspect, "Tell you about the shoppin' center shootin', where he shot the guy three times?" Petitioner alleges that this evidence was unknown or unavailable to him and was withheld from him by the police and the Commonwealth's Attorney at his trial. The interrogation document contains no date as to when the interrogation occurred.

"To be entitled to relief under Code § 19.2-327.13, a petitioner must prove by clear and convincing evidence that the previously unknown or unavailable evidence 'is material and when considered with all the other evidence in the current record, will prove that no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" <u>In re Barron</u>, 44 Va. App. 536, 540, 605 S.E.2d 777, 779 (2004) (quoting Code § 19.2-327.11(A)(vii)). The interrogation and petitioner's accompanying affidavit fail to meet this standard, as they in no way affect the sufficiency of the evidence to support petitioner's convictions.[1]

---

[1] On direct appeal, both this Court and the Supreme Court of Virginia rejected petitioner's challenges to the reliability of the identification procedure and the sufficiency of the evidence to support his convictions. Thus, petitioner's argument in support of his petition for a writ of actual innocence that Russo's identification was unreliable, does not involve newly-discovered evidence and is not appropriate for review in this proceeding. <u>See</u> <u>In re Neal</u>, 44 Va. App. 89, 90, 603 S.E.2d 170, 170 (2004).

The interrogation indicates only that Goodman stated to a suspect that "he," presumably referring to "Coco," shot a guy three times at a shopping center. Even accepting as true that Goodman thought petitioner's co-defendant, Macon, was the shooter, the interrogation alone does not establish petitioner's innocence. The trial judge specifically recognized that "[i]t's certainly a reasonable inference that it's a concertive action on the part of all three of the gentlemen that were there." It is well settled that petitioner was responsible for all of the offenses committed by any of his co-defendants where they acted in concert. See Carter v. Commonwealth, 232 Va. 122, 126-27, 348 S.E.2d 265, 267-68 (1986).

Furthermore, petitioner has not established that the interrogation is material and, when considered with the other evidence in the record, that no rational trier of fact could have found proof of his guilt beyond a reasonable doubt. First, the interrogation does not address petitioner's conviction for distribution of cocaine, to which Russo unequivocally testified. Second, a rational juror could have rejected Goodman's alleged opinion that Macon was the shooter and accepted Russo's positive identification of petitioner as the shooter. Consequently, petitioner is not entitled to relief in this proceeding. Code § 19.2-327.11(A)(vii). "While perhaps conveying suspicion on the part of [Goodman] that [someone else] was involved in the crimes . . . , the [interrogation] does nothing to establish petitioner's innocence. Thus, petitioner is not eligible for the writ on this basis." In re Barron, 44 Va. App. at 540, 605 S.E.2d at 779.

We deny petitioner's request to remand to the circuit court for an evidentiary hearing as the pleadings and records before us do not support petitioner's claim for relief.

Because the issues addressed herein are of first impression and potential litigants and members of the bar may benefit from the directives herein, we direct the Clerk to publish this order.

This Court's records reflect that James G. Connell, III, Esquire, is counsel of record for petitioner in this matter. The Circuit Court of Prince William County shall allow said court-appointed counsel the fee set forth below and counsel's necessary direct out-of-pocket expenses. The

Commonwealth shall recover of petitioner the costs in this Court. The Attorney General shall recover of the petitioner her costs expended herein.

Costs due the Commonwealth by petitioner in
 Court of Appeals of Virginia:

      Attorney's fee    $400.00 plus costs and expenses

 Attorney General's costs:

      Attorney's fee    $50.00

A Copy,

Teste:

Clerk