# CIRCUIT COURT OF THE CITY OF ROANOKE

Howard Frank Neal

v.

Commonwealth's Attorney
of the City of Roanoke

January 31, 2006

Case No. CL02000963

BY JUDGE CLIFFORD R. WECKSTEIN

Returning to the trial court after unsuccessful excursions to the Court of Appeals and Supreme Court of Virginia, Howard Frank Neal has filed a new pleading, seeking "Scientific Analysis Pursuant to Section 19.2-327.1 of the Code of Virginia" of physical evidence that was gathered in the investigation of crimes he was convicted of in 1993. More than three years ago, when Neal filed a pleading seeking the same thing, I entered a final order denying his request.

The final order denying relief was entered on January 3, 2003. *Howard F. Neal v. Commonwealth's Atty. of Roanoke City*, CL02-963. The final sentences of that order read: "Nothing further remains to be done, and the Clerk accordingly is directed to remove the cause from the docket and place it among ended common law matters. This is a final order." An opinion letter, incorporated in the final order, is reported at 60 Va. Cir. 440 (2003). As Mr. Neal noted in his current pleading, there is a clerical error in the date of that opinion letter. Though it is dated January 3, 2002, it was issued on January 3, 2003.

Along with his request for scientific analysis, Neal filed a motion seeking leave to proceed in forma pauperis, and an affidavit in support of that motion. In order to consider the request for scientific analysis, the court grants the motion for leave to proceed in forma pauperis, and reinstates the cause upon the civil docket.

Neal's present pleading, in which he analyzes my 2003 decision with lawyer-like precision and concludes that the 2003 judgment was procedurally flawed and legally unsound, must be dismissed, whether or not his analysis is accurate.

## Principles of Law

When two suits between the same parties are based on the same cause of action (claim for relief), the legal doctrine of res judicata bars relitigation of any issue or claim that was, or could have been, decided in the first case. *Lofton Ridge, L.L.C. v. Norfolk S. Ry.*, 268 Va. 377, 381, 601 S.E. 2d 649 (2004). (The literal meaning of res judicata is "the thing has been decided." *Nunez Nunez v. Vazquez Irizarry*, 367 F. Supp. 2d 201, 203-04 (D. P.R. 2005).

Collateral estoppel is a related, and similar, doctrine. Collateral estoppel says that, when a question of fact that was essential to a valid and final personal judgment was actually litigated in an action, then a party to that first action is barred ("collaterally estopped") from litigating that issue of fact in any subsequent action. *Lofton Ridge*, 268 Va. at 381. Collateral estoppel also applies to those who are "privies" of the parties to the first action. *Id.* Privies are persons having a particular type of close legal interest with the party. *See Black's Law Dictionary* 1218 (7th ed. 1999).

Under Rule 1:1 of the Rules of the Supreme Court of Virginia, final orders remain under the control of the trial court and can be modified, vacated, or suspended for 21 days after the date of entry, "and no longer." Rule 1:1 bars further litigation of issues that the court had power to decide. *Hayes v. Hayes*, 3 Va. App. 499, 504, 351 S.E.2d 590, 592 (1986).

## History

Following a bench trial in this court, Judge Diane McQ. Strickland found Neal guilty of statutory burglary and attempted robbery. He was sentenced on March 16, 1993, unsuccessfully appealed and, also without

avail, sought collateral relief in both state and federal court. The record in the underlying criminal case, No. CR92-1388, is incorporated by this reference.

On September 6, 2002, Neal filed civil pleadings in this court. The Clerk assigned Case No. CL02-963 to that civil filing; I have reinstated that case for consideration of Neal's present filings. Proceeding under a statutory scheme adopted in 2001, he sought, as he seeks now, an order compelling scientific analysis of human biological evidence related to the case in which he was convicted in 1993. *See* Code § 19.2-327.1. He also asked the court to enter an order directing storage, preservation, and retention of human biological evidence collected in the case.

By order entered on January 3, 2003, incorporating a letter opinion dated January 3, 2002 [*sic*], I denied the motion for scientific testing of evidence. In the same order, I granted the motion for preservation of human biological evidence. (At the end of this opinion letter, I set forth the efforts made by the clerk and the Roanoke City Police Department to locate any human biological evidence.)

Neal appealed. On March 25, 2003, the Court of Appeals of Virginia, in an order reciting that it did not have jurisdiction over the case, transferred the case to the Supreme Court of Virginia pursuant to Code. § 8.01-677.1. Record No. 0592-03-3. However, on September 12, 2003, the Supreme Court decided *Gaston v. Gaston*, 266 Va. 175, 585 S.E.2d 596 (2003). *Also see Harvey v. Warden*, 268 Va. 5, 597 S.E.2d 58 (2004), holding that a circuit court's ruling under Code § 19.2-327.1 is "unappealable."[1] Consequently, on December 3, 2003, the Supreme Court dismissed Neal's appeal for lack of jurisdiction. Record No. 030484. Neal asked the Supreme Court to set aside its judgment and grant a rehearing, which the Court declined to do. *Id.*, January 4, 2004.

Neal then changed direction; filing a Petition for Writ of Actual Innocence in the Court of Appeals of Virginia. In a published order, the Court of Appeals summarily denied the Petition. *In re Howard Frank Neal*, 44 Va. App. 89, 603 S.E.2d 170 (2004). In its order, the Court of Appeals, referring to this court's ruling on earlier motion for scientific testing, said:

---

[1] *Id.* at 597. ("Subsection G of Code § 19.2-327.1 expressly states, in pertinent part, that 'an action under this section . . . shall not form the basis for relief in any habeas corpus proceeding or any other appeal.' When a statute is clear and unambiguous, a court may look only to the words used in the statute to ascertain its meaning and intent. [Citations omitted.] The language used in Code § 19.2-327.1(G) is clear and unambiguous and means that a circuit court's ruling under Code § 19.2-327.1 is unappealable.") This holding has not been altered by subsequent legislative action.

162

Citing the reliability of the victim's identification of Neal, the circumstantial evidence excluding all reasonable hypotheses of Neal's innocence, and the trial judge's indication that she gave no weight to the certificate of analysis, the circuit court concluded DNA testing of the hair samples would not prove Neal's actual innocence. We agree with this finding. Thus, the certificate of analysis did not affect the outcome of Neal's trial, and provides no proper basis for the award of a writ of actual innocence.

*Id.* at 90, n. 1. Neal did not appeal the Court of Appeals's decision.

### Conclusion

Under the provisions of Rule 1:1 and the doctrine of res judicata, Neal's motion for scientific testing must be dismissed and denied.

To the extent that the Court of Appeals's agreement with my prior findings and its statements about the certificate of analysis introduced in evidence at Neal's trial were essential to that Court's judgment denying Neal's Petition for Writ of Actual Innocence, collateral estoppel also bars reconsideration of my January 3, 2003, ruling.

An appropriate order will enter.

### Retention of Evidence

In the January 3, 2003, order, I directed the storage, preservation and retention, for a period of fifteen years from the time of conviction, of human biological evidence collected in connection with Neal's 1993 convictions for statutory burglary and attempted grand larceny, and identified as follows: FS Lab # W92-03217, Item 1: "Hairs and/or fibers" from T-shirt; Item 2: "Hairs and/or fibers" from bedsheet; Item 3: "Hairs and/or fibers" from pillowcases; and Item 4: Head hair sample and pubic hair sample from Howard Frank Neal. My order required the Clerk of the Circuit Court of the City of Roanoke forthwith to determine if the evidence was in his custody. If so, he was commanded to conduct an inventory of the evidence in his custody in accordance with the standards and guidelines established by the Division of Forensic Science (DFS), and then transfer the evidence in his custody to the Roanoke City Police Department, to be transferred to the DFS; directed that

the Roanoke City Police Department inventory any evidence described above in its possession, whether received from the Clerk or otherwise, package and seal such evidence in accordance with the standards and guidelines established by the DFS, and transmit such evidence to the DFS in a manner that meets the DFS's standards.

The record in the criminal case shows that no human biological evidence was introduced in evidence, although the trial judge received two certificates of analysis in evidence, one for a limited purpose. *See* Trial Tr. 59-62, *Commonwealth v. Neal*, CR 92-1388 (Circuit Court of the City of Roanoke, Jan. 11, 1993). As a result of my order, on January 7, 2003, the deputy clerk of the Circuit Court of the City of Roanoke who is the administrator of the criminal division annotated the criminal file with the report that the Clerk's Office had only laboratory reports, but no physical evidence, in this case.

The Roanoke City Police Department also responded to my order. On February 20, 2003, the clerk's office received, and filed in Mr. Neal's criminal file, a memorandum from the Police Department's "services lieutenant." That memo reads:

> In reference to the items regarding this case, the property room has no records on file indicating the property was submitted, released, or destroyed. Our computer files date back to 1996 and in researching them we find no indication of this case. The hard card evidence cards that have been maintained from 1996 also reveal no such incident in evidence.
>
> Recently, we converted to a computerized bar-code system of evidence tracking and as part of that conversion a complete audit and inventory of all property stored in this facility was prepared. If the evidence you seek was stored here at that time it would have been catalogued and bar-coded. No such evidence exists.
>
> I apologize, but we can offer no further assistance as to where this evidence may be located or if it was ever processed into this facility.

In summary, then, neither the police department nor the clerk's office has any human biological evidence to be preserved. The clerk of this Court will send a copy of this opinion letter, of my January 3, 2003, order and opinion letter, and of the order entered today in this case, to the Director of the

Division of Forensic Science, to assure that the director is aware of the 2003 order for preservation of human biological evidence collected in the investigation of the charges against Neal, and to assure that the DFS can determine whether any of that evidence is within the DFS's dominion and control.

REPORTER'S NOTE: Earlier proceedings in this matter are reported at 60 Va. Cir. 440 and 44 Va. App. 89, 603 S.E.2d 170.